IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ DEC 2 0 2013 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

JERMAL JONES,

Plaintiff,

– against –

THE CITY OF NEW YORK, THE KINGS
COUNTY DISTRICT ATTORNEY'S
OFFICE, TINA FAY and CONNIE
SOLANGE, as employees of the Kings County
District Attorney's Office, and Individually,

Defendants.

**MEMORANDUM AND
ORDER**

12-CV-1739

**JACK B. WEINSTEIN, Senior United States District Judge:**

**Appearances:**
Plaintiff:        Alan M. Nelson Esq.
                  3000 Marcus Avenue
                  Lake Success, NY 11042
                  (516) 328-6200
                  Fax: 516-328-6354

Defendants:       Patrick Neil Beath
                  NYC Law Department
                  100 Church Street, Room 3-176
                  New York, NY 10007
                  (212) 356-2656
                  Fax: (212)788-9776

I.    Introduction ...................................................................................................................2

II.   Facts.............................................................................................................................3

III.  Standard of Review .....................................................................................................5

IV.   Fourth Amendment Claims Under § 1983 ...................................................................6

  A.  Probable Cause............................................................................................................6

    1.  Law........................................................................................................................6

    2.  Application of Law to Facts .................................................................................7

  B.  Absolute Immunity .....................................................................................................8

1



1.    Law.................................................................................................8
2.    Application of Law to Facts .....................................................9
C.    Municipal Liability ..................................................................9
1.    *Monell* Claim.............................................................................9
a.  Law.........................................................................................9
b.  Application of Law to Facts.........................................11
2.    City of New York Is Not Responsible for District Attorney Training Policies or Practice ...............................................................................................12
V.    State Claims....................................................................................18
A.    New York State Malicious Prosecution .....................................18
3.    Law.............................................................................................18
4.    Application of Law to Facts ...................................................19
B.    Intentional Infliction of Emotional Distress ...........................19
1.    Law.............................................................................................19
2.    Application of Law to Facts ...................................................19
C.    Actual and Constructive Fraud ................................................20
1.    Law.............................................................................................20
2.    Application of Law to Facts ...................................................21
D.    Negligent Misrepresentation....................................................21
1.    Law.............................................................................................21
2.    Application of Law to Facts ...................................................21
E.    Negligent Hiring, Training & Supervision ...............................22
1.    Law.............................................................................................22
2.    Application of Law to Facts ...................................................22
VI.    Conclusion......................................................................................22

## I.    Introduction

Plaintiff Jermal Jones brings federal civil rights claims pursuant to 42 U.S.C. §§ 1983 and 1988; and pendant state-law claims against the City of New York ("City"); the Kings County

District Attorney's Office ("District Attorney"); and two Assistant District Attorneys ("ADAs"), Tina Fay and Connie Solange, individually and in their professional capacities.

He alleges that ADA Fay failed to timely provide exculpatory DNA identification material pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), thus prolonging his incarceration in violation of the Fourth Amendment. *See Russo v. City of Bridgeport*, 479 F.3d 196 (2d Cir. 2007). The two ADAs allegedly "compounded that constitutional violation by systematically misrepresenting that the laboratory report demonstrated that the DNA sample acquired from the plaintiff matched the DNA contained in the semen sample recovered upon the minor complainant's clothing, when in fact it failed to do so." Pl.'s Am. Compl., ECF No. 47, ¶ 41. The City and the District Attorney are also said to be liable under *Monell v. Dept. of Social Servs.*, 436 U.S. 658 (1978), because the conduct complained of resulted from "customs, policies, usages, practices, procedures, and rules" of the City and District Attorney. *Id.* at ¶ 117.

Plaintiff contends that he was maliciously prosecuted after there was no longer probable cause for the continuation of a criminal proceeding against him. Pl's Am. Compl. at ¶¶ 51-56. He asserts that under New York law the ADAs' conduct constituted intentional infliction of emotional distress, actual and constructive fraud, and negligent misrepresentation. *Id.* at ¶¶ 57-78. The City and the District Attorney are also said to be liable under state law on a theory of *respondeat superior* and for negligent hiring, training, and supervision of the ADAs. *Id.* at ¶¶ 118-119.

The case is meritless.

## II. Facts

On November 11, 2007, plaintiff was arrested for harassment of his former girlfriend and sexual assault on her minor daughter. His arrest was based on the victims' statements. On

3

November 16, 2007, he was charged by a Kings County Grand Jury in a nine count indictment ("2007 Indictment") alleging, among other crimes: sexual abuse in the first degree and endangering the welfare of a minor.

According to a laboratory report, semen recovered from the victims' residence indicated that the probabilities of the source of the semen being from the following groups were:

> 1 in 18 Black
> Less than 1 in 331 Caucasian
> 1 in 229 Hispanic
> Less than 1 in 196 Asian

Pl.'s Am. Compl. at Ex. A, ¶¶ 5-6.  Plaintiff is Black.  The report noted that "[f]urther analysis could be done upon submission of a blood or saliva sample from the victim."  *Id.*  No evidence has been presented of a subsequent submission or report.

In short, the semen found at the crime scene could not be connected to the defendant, but was somewhat more likely to have come from a Black man than from a man of another "race." It would have been useless at a trial.  It is unclear when the report was turned over to plaintiff.

On June 4, 2008, plaintiff was separately indicted ("2008 Indictment") for unrelated crimes allegedly committed in 2002.  Pl.'s Am. Compl. at ¶ 13.  He was arraigned upon those charges on June 10, 2008.  *Id.*  The basis for the 2008 Indictment was an "actual matching" of the DNA sample acquired upon his 2007 arrest with evidence collected at the 2002 crime scene. *Id.* at ¶ 14, 47.

On June 1, 2009, plaintiff's former girlfriend wrote to plaintiff's defense attorney, recanting both complaining witnesses' accusations.  Pl.'s Am. Compl. at ¶10, Ex. B. Nevertheless, ADA Fay and ADA Solange continued to prosecute plaintiff on the 2007 Indictment.

4

On October 5, 2010, plaintiff was convicted upon the unrelated 2008 Indictment. He was sentenced to forty years in prison. *See* Beath Decl. in Supp. of Def.'s Mot. to Dismiss, ECF No. 15, Ex. I.

Misdemeanor charges of harassment in the 2007 Indictment were dismissed on December 2, 2010. Remaining charges were dismissed on June 16, 2011. Pl.'s Am. Compl. at ¶ 49, Exs. C & D.

## III.   Standard of Review

Dismissal of a claim is proper when the pleading party has failed "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "[A] court must accept the plaintiff's factual allegations as true, drawing all reasonable inferences in plaintiff's favor." *Clark Street Wine & Spirits v. Emporos Sys. Corp.*, 754 F.Supp.2d 474, 479 (E.D.N.Y. 2010). To withstand the motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

Whether a complaint states a plausible claim to relief "is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *In re Amaranth Natural Gas Commodities Litig.*, 730 F.3d 170, 180 (2d Cir. 2013). In determining the adequacy of the complaint, any written instrument attached to the complaint as an exhibit or incorporated in the complaint by reference, as well as integral documents upon which the complaint relies will be considered. *Subaru Distrib. Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 122 (2d Cir. 2005). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). The court's task "is merely to assess the legal feasibility of the complaint, not to

5

assay the weight of the evidence which might be offered in support thereof." *Geisler v.*
*Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980).

## IV. Fourth Amendment Claims Under § 1983

In *Russo v. City of Bridgeport*, 479 F.3d 196 (2d Cir. 2007), the Court of Appeals for the
Second Circuit recognized that wrongful pretrial incarceration caused by suppression of
exculpatory evidence violates the Fourth Amendment. Under *Russo*, a plaintiff is required to
show: "(1) that he has a right to be free from continued detention stemming from law
enforcement officials' mishandling or suppression of exculpatory evidence, (2) that the actions
of the officers violated that right, and (3) that the officers' conduct 'shocks the conscience.'" *Id.*
at 203. The Court relied on three factors to find such a violation: (1) the length of time of
wrongful incarceration, (2) the ease with which exculpating evidence could have been checked,
and (3) the "alleged intentionality" of the officers' behavior. *Id.* at 209.

### A. Probable Cause

#### 1. Law

In assessing Fourth Amendment claims for detention and prosecution brought under
Section 1983 courts look to the law governing probable cause of the state in which the arrest
occurred. *See Lundt v. City of New York*, 12 CIV. 1737 DLC, 2013 WL 5298458 (S.D.N.Y.
Sept. 20, 2013). In New York, probable cause is an absolute defense to both malicious
prosecution and false imprisonment. *Maron v. Cnty. of Albany*, 166 F. App'x 540, 541 (2d Cir.
2006); *see also Jaegly v. Couch*, 439 F.3d 149, 152 (2d Cir. 2006); *Raymond v. Bunch,* 136
F.Supp.2d 71, 80 (N.D.N.Y. 2001). "This is true whether that action is brought under state law
or under § 1983." *Maron*, 166 F. App'x at 541. Probable cause is defined as "such facts and
circumstances as would lead a reasonable prudent person in like circumstances to believe

6

plaintiff guilty." *Newton v. City of New York*, 566 F. Supp. 2d 256, 273 (S.D.N.Y. 2008) (quoting *Colon v. City of New York*, 60 N.Y.2d 78, 82 (N.Y. 1983)

### 2.  Application of Law to Facts

Accepting all plaintiff's factual allegations as true and drawing all reasonable inferences in his favor, defendants had probable cause to arrest and continue to detain plaintiff. Plaintiff did not have a "right to be free from continued detention stemming from law enforcement officials' mishandling or suppression of exculpatory evidence." *Russo,* 479 F.3d at 203. His confinement was privileged.

His arrest, on November 11, 2007, was based on statements of two victims—his former girlfriend and her minor daughter—positively identifying him and alleging harassment and sexual abuse. He was promptly indicted by a Kings County Grand Jury on November 16, 2007. The DNA report in question, which plaintiff has incorporated in his amended complaint, was issued several months later, on April 21, 2008. Ex. A of Pl.'s Am. Compl. Although it does not demonstrate a DNA match, the report does not exonerate. It shows only that the DNA sample taken from the underage victim included semen that was more likely to have come from a Black than a Caucasian, Hispanic, or Asian male—and plaintiff is Black. Interpreting *Brady* broadly, and drawing all inferences in plaintiff's favor, the report can be characterized as weak, ambiguous exculpatory evidence that should have been turned over to defendant, but would not have been admissible at trial under Rule 403 of the Federal Rules of Evidence.

Failure to timely receive the inconclusive DNA report would not have extirpated probable cause. Plaintiff was properly arrested and indicted based on statements from two victims identifying him as their attacker that furnished ample continuing probable cause to

believe him guilty. That the prosecutors subsequently requested and received an ambiguous DNA report did not alter the privileged nature of defendants' actions when they were taken.

Plaintiff makes much of the fact that the complaining victims later recanted. The recantation occurred after defendant was legally detained under the unrelated 2008 Indictment. During the period of purportedly unconstitutional detention—the two months between the issuance of the DNA report and the unsealing of the 2008 Indictment—prosecutors had no reason to doubt the veracity of the victims' statements, which specifically identified plaintiff as their assailant. Continued detention and prosecution under these circumstances was fully justified.

Even when considered together, the weak, possibly exculpatory DNA evidence and the questionable recantation do not overcome the presumption of probable cause created by a proper grand jury indictment. *See Colon v. City of New York*, 60 N.Y.2d 78 (N.Y. 1983) ("Once a suspect has been indicted . . . the law holds that the Grand Jury action creates a presumption of probable cause."). Taking the facts alleged in the complaint as true, the defendants' probable cause to detain and prosecute plaintiff did not disappear upon receipt of the DNA test or the recanting letter.

Plaintiff's amended complaint does not contain facts establishing a Fourth Amendment constitutional violation. No amendment to correct this deficiency is possible.

### B. Absolute Immunity

#### 1. Law

Even if the claim were not to be dismissed for the reasons already stated, defendants Fay and Solange are entitled to absolute immunity from plaintiff's Section 1983 claim.

*Imbler v. Pachtman*, 424 U.S. 409, 427 (1976), extended the doctrine of absolute immunity enjoyed by prosecutors at common law to Section 1983 suits brought against

8

prosecutors in their personal capacity. The Court "defined the scope of prosecutorial immunity not by the identity of the actor, but by reference to the 'function' performed." *Warney v. Monroe Cnty.*, 587 F.3d 113, 121 (2d Cir. 2009). Absolute immunity applies "with full force" to those acts "intimately associated with the judicial phase of the criminal process." *Imbler* 424 U.S. at 430. Only, "those aspects of the prosecutor's responsibility that cast him in the role of an administrator or investigative officer rather than that of advocate" do not enjoy the same level of immunity. *See Warney*, 587 F.3d at 121 (quoting *Imbler* 424 U.S. at 430)..

## 2. Application of Law to Facts

Here the decisions made by ADAs Fay and Solange—whether to test for potentially inculpatory (or exculpatory) DNA information, how and when to disclose or use that information, and whether to continue prosecuting plaintiff—were exercises of legal judgment undertaken in preparation for trial. *See Warney v. Monroe Cnty,* 587 F.3d 113 (2d Cir. 2009); *see also Arteaga v. State,* 72 N.Y.2d 212, 216 (1988) (New York state provides absolute immunity for conscious exercise of discretion of a judicial or quasi-judicial nature). With respect to plaintiff's Section 1983 claims against them in their personal capacity, ADA Fay and ADA Solange are entitled to absolute prosecutorial immunity.

To the extent plaintiff sues the ADA defendants in their official capacity under Section 1983, they are entitled to 11th Amendment sovereign immunity. *See Ying Jing Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir. 1993).

## C. Municipal Liability

### 1. *Monell* Claim

#### a. Law

Even if an underlying constitutional violation did occur, to hold the City and the District Attorney liable plaintiff must show that the alleged constitutional deprivation was the result of a

9

municipal policy or custom. A municipality will not be held liable under 42 U.S.C. § 1983 unless the plaintiff can demonstrate that the allegedly unconstitutional action of an individual law enforcement official was taken pursuant to a policy or custom "officially adopted and promulgated by that [municipality's] officers." *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 690 (1978). To prove that non-supervisory personnel's conduct constitutes a "custom or usage," a plaintiff can demonstrate that their practices are so well known that policymaking officials constructively acquiesced in their continuation. *City of St. Louis v. Praprotnik,* 485 U.S. 112, 127, 108 S.Ct. 915, 926, 99 L.Ed.2d 107 (1988). Absent specific allegations that she acted pursuant to an official policy, a single individual's misconduct will not result in *respondeat superior* liability for her supervisors. *Ricciuti v. N.Y.C. Transit Auth.,* 941 F.2d 119, 123 (2d Cir. 1991).

A decision by a local government not to train relevant employees about their legal duty to avoid violating constitutional rights rises to an official government policy for Section 1983 purposes only if the failure to train amounts to "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." *Connick v. Thompson,* 131 S.Ct. 13650, 1354 (2011) (quoting *Canton,* 489 U.S. at 388). "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Id.; see also Oklahoma City v. Tuttle,* 471 U.S. 808, 822–823 (1985) (plurality opinion) ("[A] 'policy' of 'inadequate training'" is "far more nebulous, and a good deal further removed from the constitutional violation than was the policy in *Monell*.").

"A pattern of *similar* constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson* 131 S.Ct. 1350, 1360 (2011). "Failure to train prosecutors in their *Brady* obligations

10

does not fall within the narrow range of *Canton*'s hypothesized single incident liability." *Id.* at

1361 (citing *City of Canton, Ohio v. Harris*, 109 S.Ct. 1197 (1989)).

### b. Application of Law to Facts

Assistant district attorneys in New York typically receive intensive training in conducting

prosecution, including *Brady* responsibilities.

> [N]ew lawyers in the offices of the City's District Attorneys receive substantial
> training on the substantive and procedural law relevant to criminal practice.
> ADAs learn relevant caselaw, receive practical training on case assessment,
> drafting complaints, interviewing witnesses, and ethics.   They also undergo
> extensive simulated courtroom advocacy sessions, eventually progressing to learn
> courtroom practice.

*Developing Legal Careers and Delivering Justice in the 21st Century*, Report by the New York

City Bar Association Task Force on New Lawyers in a Changing Profession (Fall 2013).

Without notice that the training program was inadequate with respect to the kind of DNA

*Brady* evidence here, the district attorney cannot be said to have been deliberately indifferent to

the fact that special training was necessary to avoid the constitutional violation complained of.

Although plaintiff's amended complaint includes an impressive recitation of past *Brady* claims

against the King's County District Attorney, none deal with the specific type of *Brady* material at

issue here—ambiguous DNA evidence. Ex. E of Pls.' Am. Compl., ECF No. 47. The cases

listed by plaintiff deal almost exclusively with testimonial evidence. They do not put the District

Attorney on notice that his assistant district attorneys needed special *Brady* training regarding

this kind of DNA evidence. *See Connick*, 131 S.Ct. at 1360 (finding prior *Brady* violations did

not put district attorney on notice because they did not involve "failure to disclose blood

evidence, a crime lab report, or physical or scientific evidence of any kind").

11

Plaintiff has failed to adequately allege a *Monell* custom or practice. The King's County District Attorney, his office, and the City of New York are not vicariously liable for the conduct of ADAs Fay and Solange.

### 2. City of New York Is Not Responsible for District Attorney Training Policies or Practice

It is anomalous that were the District Attorney—an elected state official independent of City control—responsible for a *Monell* violation, the City would pay the damages. While, the City is a properly named interested party, it is not itself liable for the conduct of the district attorney in failing to properly train his assistants with respect to specific aspects of prosecuting criminals. The City cannot control or intervene in such training in any way.

As the Court of Appeals for the Second Circuit recognized in *Baez v. Hennessy*, 853 F.2d 73 (2d Cir. 1988), the office of district attorney in New York has, since its inception in 1801, been regulated by the State, not the City. *Id.* at 76-77. For example, the Governor alone has the power to remove a district attorney from office. N.Y. Const. art. XIII, § 13(a), (b); *see also* Mot. to Dismiss Hr'g Tr. 9:22-10:13, Nov. 11, 2013. The statutory right to fill vacancies in the office of district attorney by appointment is reserved to the Governor. *Baez,* 853, F.2d at 76-77; N.Y. Cnty. Law § 400(7). The Governor has the authority to "require the State Attorney General to take over the prosecution of any local criminal actions or proceedings," in which case the Attorney General adopts all the powers and duties "which the district attorney would otherwise be required to exercise or perform." *Baez,* 853 F.2d at 76 (citing N.Y. Exec. Law § 63(2)). Where appropriate, the term "district attorney" means "the [State] attorney general, an assistant attorney general, a deputy attorney general or a special deputy attorney general." N.Y. CPL § 1.20(32).

12

District attorneys must stand above and separate from any city or county or officers of any local entity in making prosecutorial decisions: "It is well established in New York that the district attorney, and the district attorney alone, should decide when and in what manner to prosecute a suspected offender. The responsibilities attendant the position of [district attorney] necessitate the exercise of completely impartial judgment and discretion." *Baez,* 853 F.2d at 77 (citations and quotations omitted). It is the local electorate, not any local official which selects district attorneys in New York. *See* N.Y. Const. Art. XIII, § 13(a); Mot. to Dismiss Hr'g Tr. 9:6-9:9, Nov. 11, 2013.

Essential to the proper constitutional and effective administration of criminal justice is independence of district attorneys. When necessary, they are expected to prosecute crimes by members of the governments of the municipalities they serve, including mayors and other city officials. *See, e.g.,* Kenneth D. Ackerman, BOSS TWEED: THE RISE AND FALL OF THE CORRUPT POL WHO CONCEIVED THE SOUL OF MODERN NEW YORK (Da Capo Press 2005) (biography of Willaim "Boss" Tweed); *Seabury Investigation Is Close to Walker: New York's Mayor May Have Many Things to Explain,* Massena Observer, May 26, 1932 (reporting on the investigation of New York City as it focused in on Mayor Walker); Robert D. McFadden, *The Lonely Death of a Man who Made a Scandal*, N.Y. TIMES, April 5, 1986 (commemorating Brooklyn District Attorney Miles F. McDonald, who investigated the police corruption scandal leading to the resignation of Mayor William O'Dwyer); *Profile of William O'Dwyer*, N.Y. TIMES, Nov. 25, 1964.

Taking into account the history and nature of the office, including the independence and discretion necessarily afforded district attorneys, the Court of Appeals for the Second Circuit determined that "when prosecuting a criminal matter, a district attorney in New York State,

13

acting in a quasi-judicial capacity, represents the State not the county." *Baez*, 853 F.2d at 77. Where "controlling law places limits on the County's authority over the district attorney, the County cannot be said to be responsible for the conduct at issue." *Id.* at 78.

After *Baez*, in *Walker v. City of New York*, 974 F.2d 293 (2d. Cir. 1992), the Court of Appeals for the Second Circuit noted that, unlike prosecutorial conduct, the disciplinary and administrative practices of district attorneys are municipal functions. In *Walker*, as in the instant case, the plaintiff alleged that prosecutorial misconduct resulted from the failure of the Kings County District Attorney to train its assistants not to suppress exculpatory evidence. *Id.* at 295.

*Walker* might be read as suggesting that when acting as a manager of personnel or office administrator, the district attorney is a municipal policymaker and that supervising and training prosecutors on their *Brady* obligations are municipal administrative functions. *Id.*; *see also Ying Jing Gan v. City of New York*, 996 F.2d 522, 536 (2d Cir. 1993) ("With respect . . . to claims centering not on decisions whether or not, and on what charges, to prosecute but rather on the administration of the district attorney's office, the district attorney has been treated not as a state official but rather as an official of the municipality to which he is assigned."). It distinguished *Baez* as follows:

> *Baez* . . . involved a challenge to the decision by an ADA to prosecute an individual and the district attorney's endorsement of that decision. Here, by contrast, Walker is challenging the district attorney's management of the office – in particular the decision not to supervise or train ADA on *Brady* and perjury issues.

*Id.* at 301.

In a puzzling transitional Q.E.D., *Walker* went on to declare the City liable for the District Attorney's "municipal policies":

> *Since* the city has conceded that *no City official has veto authority over training or supervision decisions by the county district attorney*, we hold that the Kings

14

County District Attorney acted as a municipal policymaker in this case. Accordingly Walker's *allegations of deliberate indifference by the District Attorney provide a proper basis for holding the City liable*.

974 F.2d at 301 (emphasis added).

*Walker* left unexplained the basis for its assumption that the City of New York is the municipal entity for which the Kings County District Attorney is the policymaker when deciding training policies regarding legal responsibilities of ADAs in their prosecutorial functions. Given the District Attorney's absolute independence with respect to decisions on procedures in prosecuting criminal cases, it seems strange to hold the City responsible for prosecutorial policy choices made by the district attorney. The effect of treating a district attorney as a City policymaker in these situations is to hold the City or county liable for policies made by a district attorney when no officer or agency of the City, including the Mayor, exercises any authority to control the decision. *Id.*

Yet, although *Walker* does not spell them out, peculiarities in New York law require this puzzling result. Under New York State law the Office of the District Attorney does not itself have a legal existence separate from the District Attorney. *See White v. Vance*, 2011 WL 2565476 (S.D.N.Y. June 21, 2011) (quoting *Woodward v. Office of DA*, 689 F. Supp. 2d 655, 658 (S.D.N.Y. 2010)). The Kings County District Attorney's Office cannot, as such, be the governmental unit liable for a *Monell* claim based on a problematic policy or custom within the Office.

The City of New York, by contrast, is a legally distinct, suable municipal entity. It is also the local governmental unit responsible for paying the salaries of the county district attorneys and for any judgments against them or their ADAs. *See* N.Y. Cnty. Law § 700(10); N.Y. Cnty. Law § 928; New York City Charter § 1125; New York City Council, Committee on Public

15

Safety, *Fiscal 2008 Executive Budget Report*, at 17 (May 2007).  Corporation Counsel for the

City of New York represents the District Attorney in Section 1983 suits because it is the City

office that represents the entity that will ultimately pay damages.  *See* Gen. Municipal Law § 50-

k; N.Y.C. Admin. Code § 7-110.  The peculiar, but necessary, consequence is that the City is a

proper municipal party in interest in a *Monell* claim based on policies or customs independently

set and executed by the district attorney.

        Although district attorneys are New York constitutional officers, not employees of the

City, in many circumstances they are considered "local" rather than "state" officers.  *See* NY

Const. art. XIII, § 13 (Law enforcement and other officers); N.Y. Cnty. § 700 (District attorney;

powers and duties); N.Y. Pub. Officers Law § 2; *Kelley v. McGee,* 57 N.Y.2d 522 (1982)

(Although enforcement of state law "is a matter of concern to the State," district attorneys are

county officers within state compensation law).  In some "managerial" situations it is,

accordingly, appropriate to treat district attorneys as municipal policymakers.  *See McMillian v.*

*Monroe Cnty.*, 520 U.S. 781, 795 (1997) ("[O]ur inquiry is dependent on an analysis of state law.

. . . our understanding of the actual function of a governmental official, in a particular area, will

necessarily be dependent on the definition of the official's functions under relevant state law.").

With respect to building management, maintenance decisions, or discrimination against

employees, for example, the district attorney can be considered a municipal actor.

        The case at bar does not deal with such an administrative *municipal* policy or custom.

The plaintiff here alleged prosecutorial misconduct resulted from the failure of the Kings County

District Attorney to properly train its assistants not to suppress exculpatory evidence in criminal

prosecutions.

16

The Supreme Court's post-*Walker* decision in *Van de Kamp v. Goldstein*, 555 U.S. 335 (2009), establishes that the training provided by a district attorney's office to its prosecutors concerning the proper disclosure of exculpatory or impeachment material is a prosecutorial function entitled to absolute prosecutorial immunity. In *Van de Kamp*, the Supreme Court acknowledged that there are administrative acts performed by a prosecutor which are not entitled to absolute prosecutorial immunity, such as "workplace hiring, payroll administration, the maintenance of physical facilities, and the like," but it found that training concerning disclosure obligations in advance of trial—though sometimes characterized as "administrative"—is sufficiently prosecutorial in nature to warrant the application of absolute prosecutorial immunity. *Id.* at 344.

Tasks directly connected with the prosecutor's basic trial advocacy and prosecutorial duties—including *Brady* decisions—should under *Van de Kamp* be treated as "prosecutorial conduct." *Cf. McMillian,* 520 U.S. at 786 ("[S]tate law can [not] answer the question for us by, for example, simply labeling as a state official an official who clearly makes county policy."); *Regents of Univ. of Cal. v. Doe,* 519 U.S. 425, 429, n.5 (1997) ("[T]he question whether a particular state agency has the same kind of independent status as a county or is instead an arm of the State . . . within the meaning of the Eleventh Amendment, is a question of federal law. But that federal question can be answered only after considering the provisions of state law that define the agency's character."); *Baez,* 853 F.2d at 77 ("[W]hen prosecuting a criminal matter, a district attorney in New York State, acting in a quasi-judicial capacity, represents the State, not the county."); *but cf. Goldstein v. City of Long Beach*, 715 F.3d 750, 760 (9th Cir. 2013) (finding *Van de Kamp* inapposite to the state-local determination under Section 1983).

17

Here, the function at issue is the training of ADAs in the proper disclosure of exculpatory DNA evidence. This function is inextricably connected with prosecution of criminal cases. It involves "legal knowledge and the exercise of related discretion." *Van de Kamp*, 555 U.S. at 345. It is prosecutorial in nature.

There is no long and persistent history of feckless training and discipline practices regarding personnel that might give rise to municipal liability. *See Gentile v. County of Suffolk*, 926 F.2d 142,153 n.5 (2d Cir. 1991) (County was held liable for a long history of negligent disciplinary practices regarding law enforcement personnel); *cf. Zarcone v. Perry*, 572 F.2d 52 (2d Cir. 1978) (judge had coffee vendor placed in handcuffs because his coffee was not to the court's taste; liability of judge upheld); *Cup of coffee costs judge job, brings $141,000 award to vendor*, THE FREE LANCE STAR, July 21, 1977; *Evergreen Review, Inc. v. Cahn*, 230 F.Supp. 498 (E.D.N.Y. 1964) (district attorney who illegally seized whole production of a magazine because he disapproved of what he considered pornography could be held liable).

The City of New York is not a liable party because the instant case does not deal with what can be categorized as municipal policies or customs. The fact that the City would pay any damages assessed against a District Attorney or ADA does not change this conclusion.

## V. State Claims

### A. New York State Malicious Prosecution

#### 1. Law

The elements of an action for malicious prosecution in New York are: (1) the initiation or continuation of a criminal proceeding, (2) termination of the criminal proceeding in plaintiff's favor, (3) lack of probable cause for such proceeding, and (4) actual malice. *King v. City of New York*, 2013 WL 2285197, at *6 (E.D.N.Y. May 23, 2013). Probable cause in a malicious prosecution claim is "the knowledge of facts, actual or apparent, strong enough to justify a

18

reasonable man in the belief that he has lawful grounds for prosecuting the defendant in the manner complained of." *Rounseville v. Zahl*, 13 F.3d 625, 629 (2d Cir.1994).

### 2. Application of Law to Facts

As explained above, construing the facts in a light most favorable to him, plaintiff fails to allege facts sufficient to overcome the defendants' probable cause to confine and prosecute him. *See infra* IV.A.1.

Even if Jones had successfully pled these elements, he could not prevail against the individual defendants, who are entitled to absolute immunity under both state and federal law. *See infra* IV.B.

## B. Intentional Infliction of Emotional Distress

### 1. Law

To establish intentional infliction of emotional distress in New York, plaintiff must prove: (1) extreme and outrageous conduct, (2) intent to cause emotional distress, (3) a causal connection between the conduct and injury, and (4) severe emotional distress. *Howell v. NY. PostCo., Inc.*, 81 N.Y.2d 115, 121 (N.Y. 1993).

### 2. Application of Law to Facts

Plaintiff alleges intentional infliction of emotional distress against the City of New York, the District Attorney and the individually named ADA defendants. Specifically, he pleads that defendants "engaged in a continuous pattern of extreme and outrageous conduct" directed at him, which proximately caused him to suffer "severe emotional distress." Pls.' Am. Compl. ¶ 57-62.

Plaintiff's emotional distress claims do not support a claim for relief.

It is "well-settled that public policy bars intentional infliction of emotional distress claims against government entities." *King*, 2013 WL 2285197 at *11; *see also Lauer v. City of New York*, 659 N.Y.S.2d 57, 58 (2d Dep't 1997). As against the individual ADA defendants, plaintiff

19

has not adequately alleged conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Murphy v. American Home Products Corp.*, 58 N.Y.2d 293, 303 (N.Y. 1983). The complaints of the apparent victims provided sufficient basis to hold plaintiff for trial.

Plaintiff's claims for intentional infliction of emotional distressed are dismissed as to all defendants.

## C. Actual and Constructive Fraud
### 1. Law

To state a cause of action for fraud under New York law, "a plaintiff must allege a representation of material fact, the falsity of the representation, knowledge by the party making the representation that it was false when made, justifiable reliance by the plaintiff and resulting injury." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir.2006) (quoting Kaufman v. Cohen, 307 A.D.2d 113, 119, 760 N.Y.S.2d 157 (1st Dep't 2003)).

Plaintiff must not only plead the elements of the relevant claim under New York law, but "must also meet the pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure, which provides that '[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.'" *Apace Commc'ns, Ltd. v. Burke*, 522 F. Supp. 2d 509, 514 (W.D.N.Y. 2007). To comply with Rule 9(b), "the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Lerner*, 459 F.3d at 290.

### 2. Application of Law to Facts

The amended complaint simply states that ADA Fay "systematically miss-represented to the court and plaintiff's counsel that the DNA evidence in fact 'matched' plaintiff." Pl.'s Am. Compl. ¶¶ 6-7, 65. Plaintiffs' allegations of actual and constructive fraud fail to meet the pleading requirements of Rule 9(b). His claims for actual and constructive fraud are dismissed.

### D. Negligent Misrepresentation

#### 1. Law

A claim of negligent misrepresentation must satisfy the following elements: "(1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the defendant knew that the plaintiff desired the information supplied in the representation for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment." *Newton v. City of New York*, 566 F. Supp. 2d 256, 274-75 (S.D.N.Y. 2008); *see Hydro Investors, Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 20 (2d Cir. 2000).

The special relationship and duty required for a negligent misrepresentation claim is based on three factors: "whether the person making the representation held or appeared to hold unique or special expertise; whether a special relationship of trust or confidence existed between the parties; and whether the speaker was aware of the use to which the information would be put and supplied it for that purpose. *Newton*, 566 F. Supp. 2d at 281.

### 2. Application of Law to Facts

Plaintiff has not adequately alleged that defendants had a special duty to him under New York law.

### E.  Negligent Hiring, Training & Supervision

#### 1.  Law

Plaintiff's sixth and final cause of action is against the City of New York and the Kings County District Attorney for negligent hiring, training and supervision under New York state law.  To sustain a claim against a municipal employer under New York law on this theory plaintiff must show "the employee acted outside the scope of employment when committing the tort." *Cerbelli v. City of N.Y.*, 2008 WL 4449634, at *24 (E.D.N.Y. Oct. 1, 2008) (collecting cases).

#### 2.  Application of Law to Facts

Plaintiff does not allege defendants acted outside the scope of their employment.  The conduct complained of was attributable to prosecutors Fay and Solange acting properly within the scope of their employment. *See Velez v. City of N.Y.*, 2012 WL 1237646, *5 (E.D.N.Y. Apr. 12, 2012).

Plaintiff's negligent hiring claims are dismissed.

## VI.    Conclusion

The case is dismissed.  No costs and disbursements are awarded.

SO ORDERED.

Jack B. Weinstein
Senior United States District Judge

Date:    December 20, 2013
         Brooklyn, New York

22